**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| **HILDA L. SOLIS**, Secretary of Labor, | : |
| United States Department of Labor, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| | : |
| **GEORGE HOFMEISTER**; **BERNARD** | : |
| **TEW**; **TEW ENTERPRISES, LLC**; | : |
| **BLUEGRASS INVESTMENT** | : |
| **MANAGEMENT, LLC**; **METAVATION,** | : |
| **LLC**; **MIDS, LLC**; **HILLSDALE** | : |
| **HOURLY PENSION PLAN**; and | : |
| **HILLSDALE SALARIED PENSION** | : |
| **PLAN**, | : |
| | : |
| Defendants. | : |

File No.:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## COMPLAINT

Plaintiff Hilda L. Solis, Secretary of Labor, United States Department of Labor (the "Secretary"), alleges as follows:

1.     This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1001, et seq., and is brought by the Secretary under ERISA §§502(a)(2) and (5), 29 U.S.C. §§1132(a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA §409, 29 U.S.C. §1109, and to obtain such further equitable relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

2.     This court has jurisdiction over this action pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

3.      The Hillsdale Hourly Pension Plan (also known as the Metavation Hourly Pension Plan) ("Hourly Plan") is an employee benefit plan within the meaning of ERISA §3(3), 29 U.S.C. §1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA §4(a), 29 U.S.C. §1003(a).

4.      The Hillsdale Salaried Pension Plan (also known as the Metavation Salaried Pension Plan) ("Salaried Plan") is an employee benefit plan within the meaning of ERISA §3(3), 29 U.S.C. §1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA §4(a), 29 U.S.C. §1003(a).

5.      The Hourly Plan and the Salaried Plan (collectively "the Plans") are named as defendants herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

6.      Venue of this action lies in the Eastern District of Kentucky pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because the Plans are administered in Lexington, Fayette County, Kentucky, within this district.

## **DEFENDANTS**

7.      At all relevant times, defendant Metavation, LLC, ("Metavation"), headquartered in Lexington, Kentucky, was the sponsor of the Plans; the Plan Administrator to the Plans; the employer employing the Plans' participants; a fiduciary of the Plans within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A); and a party in interest to the Plans within the meaning of ERISA §§3(14)(A) and (C), 29 U.S.C. §§1002(14)(A) and (C).

8.      At all relevant times, defendant Metavation was wholly-owned by Cerion, LLC ("Cerion"), which was itself wholly-owned by Revstone Industries, LLC ("Revstone Industries").

9.     At all relevant times, defendant George Hofmeister ("Hofmeister"), who resides in Paris, Kentucky, was the sole trustee of the Plans; a named fiduciary of the Plans; the chairman and director of Metavation; an officer of Revstone Industries; a fiduciary of the Plans within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A); and a party in interest to the Plans within the meaning of ERISA §§3(14)(A) and (H), 29 U.S.C. §§1002(14)(A) and (H).

10.    From approximately November 2010 to the present, defendant Hofmeister was a member of the Revstone Pension Investment Committee, had discretionary authority and control over the administration of the Plans and their assets, and as such, he was a fiduciary of the Plans within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A); and a party in interest to the Plans within the meaning of ERISA §§3(14)(A), 29 U.S.C. §§1002(14)(A).

11.    Through November 1, 2010, defendant Tew Enterprises, LLC ("Tew Enterprises") was a service provider to the Plans; a fiduciary of the Plans within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A); and a party in interest to the Plans within the meaning of ERISA §§3(14)(A) and (B), 29 U.S.C. §§1002(14)(A) and (B).

12.    From November 1, 2010 to the present, Bluegrass Investment Management, LLC ("Bluegrass") was a service provider to the Plans; a fiduciary of the Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A); and a party in interest to the Plans within the meaning of ERISA §§3(14)(A) and (B), 29 U.S.C. §§1002(14)(A) and (B).

13.    At all relevant times, defendant Bernard Tew ("Tew") was a managing member of Tew Enterprises and Bluegrass, was a service provider to the Plans; exercised discretionary control over the assets of the Plans, and as such, he was a fiduciary of the Plans within the meaning of ERISA §3(21)(A), 29 U.S.C. §1002(21)(A); and a party in interest to the Plans within the meaning of ERISA §3(14)(A), 29 U.S.C. §1002(14)(A).

14.     At all relevant times, defendant MIDS, LLC ("MIDS") was wholly owned by Metavation, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

## PARTIES IN INTEREST

15.     At all relevant times, Revstone Industries was the parent and sole owner of Cerion.  Revstone Industries is located at 2250 Thunderstick Drive, Lexington, Kentucky. Cerion, located at 14701 Keel St, Plymouth, Michigan, was the parent and sole owner of Metavation; therefore, Revstone Industries was a party in interest to the Plans within the meaning of ERISA §3(14)(E), 29 U.S.C. §1002(14)(E).

16.     At all relevant times, Revstone Plastics, LLC ("Revstone Plastics") was wholly-owned by Revstone Industries, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

17.     At all relevant times, Revstone Tool & Engineering, LLC ("Revstone Tool") was wholly-owned by Revstone Industries, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

18.     At all relevant times, Contech Forgings, LLC ("Contech Forgings") was wholly-owned by Revstone Tool, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

19.     At all relevant times, Lansing Tool & Engineering, LLC ("Lansing Tool") was wholly-owned by Revstone Tool, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

20.     At all relevant times, RPM-TEC, LLC ("RPM-TEC") was wholly-owned by Revstone Industries, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

21.     At all relevant times, Saleen, LLC ("Saleen") was wholly-owned by RPM-TEC, LLC, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

22.     At all relevant times, Saleen Distribution & Sales, LLC ("Saleen Distribution") was wholly-owned by RPM-TEC, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

23.     At all relevant times, RPM Towing, LLC ("RPM Towing") was wholly-owned by RPM-TEC, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

24.     At all relevant times, RPM Retail Sales, LLC ("RPM Sales") was wholly-owned by RPM-TEC, and a party in interest to the Plans within the meaning of ERISA §3(14)(G), 29 U.S.C. §1002(14)(G).

25.     At all relevant times, Jamie S. Hofmeister was the daughter of defendant George Hofmeister, a beneficiary of two different irrevocable trusts, one created in 1991 and the other created in 2004, both created by Hofmeister.  Jamie S. Hofmeister's 2004 trust owned one-third of Revstone Industries and at least twelve companies that Revstone Industries owns.  Jamie S. Hofmeister is also a party in interest to the Plans within the meaning of ERISA §3(14)(F), 29 U.S.C. §1002(14)(F).

26.     At all relevant times, Megan G. Hofmeister was the daughter of defendant George Hofmeister, a beneficiary of two different irrevocable trusts, one created in 1991 and the other

created in 2004, both created by Hofmeister.  Megan G. Hofmeister's 2004 trust owned one-third of Revstone Industries and at least twelve companies that Revstone Industries owns.  Megan G. Hofmeister is also a party in interest to the Plans within the meaning of ERISA §3(14)(F), 29 U.S.C. §1002(14)(F).

27.     At all relevant times, Scott R. Hofmeister was the son of defendant George Hofmeister, a beneficiary of two different irrevocable trusts, one created in 1991 and the other created in 2004, both created by Hofmeister.  Scott R. Hofmeister's 2004 trust owned one-third of Revstone Industries and at least twelve companies that Revstone Industries owns.  Scott R. Hofmeister is also a party in interest to the Plans within the meaning of ERISA §3(14)(F), 29 U.S.C. §1002(14)(F).

<u>**COUNT ONE**</u>
**(Transfer of the Plans' Assets to Revstone Plastics, LLC)**

28.     Paragraphs 1 through 9, 15 through 16, and 25 through 27 above are realleged and incorporated herein by reference.

29.     On March 30, 2009, Hofmeister, on behalf of the Salaried Plan, executed a "Non-Negotiable Secured Promissory Note" and "Commercial Security Agreement" with Revstone Plastics, pursuant to which the Salaried Plan loaned $1.5 million of plan assets to Revstone Plastics.

30.     On March 30, 2009, Hofmeister, on behalf of the Hourly Plan, executed a "Non-Negotiable Secured Promissory Note" and "Commercial Security Agreement" with Revstone Plastics, pursuant to which the Hourly Plan loaned $2.0 million of plan assets to Revstone Plastics.

31.     Under the terms of the loan, Revstone Plastics agreed to make monthly interest payments to the Plans of twelve percent (12%) per annum for 21 months, with all accrued interest plus the outstanding balance due on or before December 1, 2010.

32.     On September 1, 2010, $430,000 of the outstanding balance of the loan from the Salaried Plan was repaid and $570,000 of the outstanding balance of the loan from the Hourly Plan was repaid.  Since December 1, 2010 Revstone Plastics has failed to make any interest payments on the loan; through October 31, 2011, the unremitted interest payments and late fees total $300,000 and $2.5 million of the loan remains outstanding.

33.     As alleged in paragraphs 29 through 32 above, defendant Hofmeister:

a.      failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.      caused the Plans to engage in transactions which he knew or should have known constituted a direct or indirect lending of money or other extension of credit between the Plans and a party in interest, in violation of ERISA §406(a)(1)(B), 29 U.S.C. §1106(a)(1)(B);

c.      caused the Plans to engage in transactions which he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

d.      dealt with assets of the Plans in his own interest in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

e.      acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

34.     Defendant Metavation failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration when it allowed the Plans to engage in the activities set forth in paragraphs 29 through 32 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

35.     Defendant Metavation is liable, pursuant to ERISA §405(a)(2), 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by a co-fiduciary, as described in paragraphs 29 through 33 above, because by failing to comply with ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of its specific responsibilities which gave rise to its status as a fiduciary of the Plans, it enabled George Hofmeister to commit the breaches set forth in paragraph 33 above.

36.     Defendant Metavation is liable, pursuant to ERISA §405(a)(3), 29 U.S.C. §1105(a)(3), for the breaches of fiduciary responsibility by co-fiduciary Hofmeister, as described in paragraphs 29 through 33 above, because it had knowledge of the breaches and failed to make reasonable efforts under the circumstances to remedy the breaches.

## COUNT TWO
### (Transfer of the Plans' Assets to Revstone Industries, LLC through Timco Loan)

37.     Paragraphs 1 through 9, 15, and 25 though 27 above are realleged and incorporated herein by reference.

38.     On February 18, 2009, Hofmeister, on behalf of the Plans, executed a "Non-Negotiable Subordinated Secured Promissory Note" and "Commercial Loan and Security

Agreement" with Timco, LLC ("Timco"), pursuant to which the Plans loaned $1.0 million in plan assets to Timco; $690,000 of the loan amount was transferred from the Hourly Plan, and $310,000 of the loan amount was transferred from the Salaried Plan.

39.     Under the terms of the loan, Timco agreed to make monthly interest payments to the Plans of twelve percent (12%) per annum for 21 months, with all accrued interest plus the outstanding balance due on or before December 1, 2010.

40.     On February 20, 2009, Timco executed a "Non-Negotiable Secured Promissory Note" and "Loan and Security Agreement" with Revstone Industries, executed by Hofmeister, as Chairman of Revstone Industries, pursuant to which it loaned $1.0 million to Revstone Industries.

41.     Under the terms of the loan, Revstone Industries agreed to make monthly interest payments to Timco of thirteen percent (13%) per annum for 21 months, with all accrued interest plus the outstanding balance due on or before December 1, 2010.

42.     As of October 31, 2011, interest payments on the loan from the Plans to Timco had not been received for the period May 2010 through October 2011, which equals missed payments totaling $180,000 and missed late fees totaling $18,000.  In addition, $1 million of the loan remains outstanding.

43.     As alleged in paragraphs 38 through 42 above, defendant Hofmeister:

a.     failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.      caused the Plans to engage in transactions which he knew or should have known constituted a direct or indirect lending of money or other extension of credit between the Plans and a party in interest, in violation of ERISA §406(a)(1)(B), 29 U.S.C. §1106(a)(1)(B);

c.      caused the Plans to engage in transactions which he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D); and

d.      acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

44.     Defendant Metavation failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration when it allowed the Plans to engage in the activities set forth in paragraphs 38 through 42 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

45.     Defendant Metavation is liable, pursuant to ERISA §405(a)(2), 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by a co-fiduciary, as described in paragraphs 38 through 43 above, because by failing to comply with ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of its specific responsibilities which gave rise to its status as a fiduciary of the Plans, it enabled George Hofmeister to commit the breaches set forth in Paragraph 43 above.

46.     Defendant Metavation is liable, pursuant to ERISA §405(a)(3), 29 U.S.C. §1105(a)(3), for the breaches of fiduciary responsibility by co-fiduciary Hofmeister, as described

in paragraphs 38 through 43 above, because it had knowledge of the breaches and failed to make reasonable efforts under the circumstances to remedy the breaches.

<u>**COUNT THREE**</u>
**(Transfer of the Plans' Assets to Triem Motors, LLC)**

47.     Paragraphs 1 through 9, and 25 through 27 above are realleged and incorporated herein by reference.

48.     On or about October 26, 2007, Triem Motors was created as a holding company, wholly owned by the trusts established in 1991 for the benefit of Jamie S. Hofmeister, Megan G. Hofmeister, and Scott R. Hofmeister, to purchase Kinetic Enterprises, LLC ("Kinetic Enterprises").

49.     Prior to February 18, 2009, defendant Hofmeister personally guaranteed a $1.25 million promissory note issued to Kinetic Enterprises.

50.     On or about February 12, 2009, Hofmeister, on behalf of the Plans, executed a "Non-Negotiable Secured Promissory Note" and "Commercial Security Agreement" with Triem Motors, LLC ("Triem Motors"), pursuant to which the Plans loaned $800,000 to Triem Motors; $552,000 of the loan amount was transferred from the Hourly Plan, and $248,000 of the loan amount was transferred from the Salaried Plan.

51.     The purpose of the $800,000 loan from the Plans to Triem Motors was to facilitate the purchase of Kinetic Enterprises by Triem Motors. The $800,000 loan from the Plans to Triem Motors released Hofmeister's personal guarantee on the promissory note.

52.     As of July 31, 2011, only $48,050 of the outstanding balance of the Salaried Plan's portion of the loan had been repaid and only $324,210.01 of the outstanding balance of the Hourly Plan's portion of the loan had been repaid.

53.     As alleged in paragraphs 48 through 52 above, defendant Hofmeister:

        a.        failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

        b.        caused the Plans to engage in transactions which he knew or should have known constituted a direct or indirect lending of money or other extension of credit between the Plans and a party in interest, in violation of ERISA §406(a)(1)(B), 29 U.S.C. §1106(a)(1)(B);

        c.        caused the Plans to engage in transactions which he knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

        d.        dealt with assets of the Plans in his own interest in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

        e.        acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

54.    Defendant Metavation failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration when it allowed the Plans to engage in the activities set forth in paragraphs 48 through 52 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

55.    Defendant Metavation is liable, pursuant to ERISA §405(a)(2), 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by a co-fiduciary, as described in paragraphs 48 through 53 above, because by failing to comply with ERISA §404(a)(1), 29

U.S.C. §1104(a)(1), in the administration of its specific responsibilities which gave rise to its status as a fiduciary of the Plans, it enabled George Hofmeister to commit the breaches set forth in Paragraph 53 above.

56.     Defendant Metavation is liable, pursuant to ERISA §405(a)(3), 29 U.S.C. §1105(a)(3), for the breaches of fiduciary responsibility by co-fiduciary Hofmeister, as described in paragraphs 48 through 53 above, because it had knowledge of the breaches and failed to make reasonable efforts under the circumstances to remedy the breaches.

**COUNT FOUR**
**(Acquisition of Business and Real Property and Leasing of Real Property**
**to Contech Forgings)**

57.     Paragraphs 1 through 9, 11, 13, 15, 17 through 18, and 25 through 27 above are realleged and incorporated herein by reference.

58.     On July 27, 2010, Hofmeister, on behalf of Revstone Industries, purchased a business and real property located at 1508 Hwy 246 S, Greenwood, SC 29646. Revstone Industries then transferred the business and real property to Contech Forgings.

59.     On July 27, 2010, the Plans purchased the business and real property described in paragraph 58 above from Contech Forgings for $3.4 million:  $1,054,000 million of the purchase price was transferred from the Salaried Plan and $2,346,000 of the purchase price was transferred from the Hourly Plan.  Upon information and belief, Hofmeister approved the disbursement of the Plans' assets to purchase the business and real property.

60.     The real property located at 1508 Hwy 246 S, Greenwood, SC 29646 consisted of three pieces of real property, all located in South Carolina. The property consists of parcels 6844-651-995, 6877-958-296, and 6887-015-332.

61.     On July 27, 2010, Tew Enterprises opined that the purchase of the real property from Contech Forgings met the requirements of ERISA.

62.     On July 27, 2010, the Plans entered into a five-year lease with Contech Forgings, by which Contech Forgings leased the real property described in paragraph 60 for a five-year term at $31,252.82 per month.

63.     Bernard Tew, on behalf of the Plans, executed the lease agreement between the Plans and Contech Forgings.

64.     As alleged in paragraphs 58 through 63 above, defendants Hofmeister, Tew Enterprises, and Bernard Tew:

        a.      failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

        b.      caused the Plans to engage in transactions which they knew or should have known constituted a sale or exchange, or leasing, of any property between the Plans and a party in interest, in violation of ERISA §406(a)(1)(A), 29 U.S.C. §1106(a)(1)(A);

        c.      caused the Plans to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

        d.      caused the Plans to hold employer real property in violation of ERISA §§406(a)(2) and 407, 29 U.S.C. §§1106(a)(2) and 1107; and,

       e.      acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

    65.    Defendant Metavation failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration when it allowed the Plans to engage in the activities set forth in paragraphs 58 through 63 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

    66.    Defendant Metavation is liable, pursuant to ERISA §405(a)(2), 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by a co-fiduciary, as described in paragraphs 58 through 64 above, because by failing to comply with ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of its specific responsibilities which gave rise to its status as a fiduciary of the Plans, it enabled Hofmeister, Tew Enterprises, and Tew to commit the breaches described in paragraph 64 above.

    67.    Defendant Metavation is liable, pursuant to ERISA §405(a)(3), 29 U.S.C. §1105(a)(3), for the breaches of fiduciary responsibility by co-fiduciaries Hofmeister, Tew Enterprises, and Tew, as described in paragraphs 58 through 64 above, because it had knowledge of the breaches and failed to make reasonable efforts under the circumstances to remedy the breaches.

## COUNT FIVE
### (Plans Purchase of Customer Notes)

    68.    Paragraphs 1 through 9, 11 through 14, 15, and 17 through 27 above are realleged and incorporated herein by reference.

69.     On or about July 27, 2010, the Plans purchased a $1.6 million customer note from MIDS for which Contech Forgings was the debtor.

70.     On September 15, 2010, Bernard Tew, on behalf of Tew Enterprises, completed an "Independent Fiduciary Review Checklist" relating to the $1.6 million Contech Forgings customer note.

71.     On or about August 13, 2010, the Plans purchased a $3.7 million customer note from MIDS for which Lansing Tool was the debtor.

72.     Bernard Tew, on behalf of Tew Enterprises, completed an "Independent Fiduciary Review Checklist," undated, relating to the $3.7 million Lansing Tool customer note.

73.     On or about August 18, 2010, the Plans purchased a $3.65 million customer note from MIDS for which RPM Towing was the debtor.

74.     Bernard Tew, on behalf of Tew Enterprises, completed an "Independent Fiduciary Review Checklist," undated, relating to the $3.65 million RPM Towing customer note.

75.     On or about August 18, 2010, the Plans purchased a $3.65 million customer note from MIDS for which RPM Sales was the debtor.

76.     Bernard Tew, on behalf of Tew Enterprises, completed an "Independent Fiduciary Review Checklist," undated, relating to the $3.65 million RPM Sales customer note.

77.     On or about August 25, 2010, the Plans purchased a $3.5 million customer note from MIDS for which Saleen was the debtor.

78.     Bernard Tew, on behalf of Tew Enterprises, completed an "Independent Fiduciary Review Checklist," undated, relating to the $3.5 million Saleen customer note.

79.     On August 25, 2010, the Plans purchased a $2.5 million customer note from MIDS for which Saleen Distribution was the debtor.

80.     Bernard Tew, on behalf of Tew Enterprises, completed an "Independent Fiduciary Review Checklist," undated, relating to the $2.5 million Saleen Distribution customer note.

81.     On or about January 3, 2011, the Plans purchased a $1.75 million customer note from MIDS for which Contech Forgings was the debtor.

82.     On January 3, 2011, Bernard Tew, on behalf of Bluegrass, completed an "Independent Fiduciary Review Checklist" relating to the $1.75 million Contech Forgings customer note.

83.     Tew Enterprises acknowledged and accepted, in writing, fiduciary responsibility with respect to the Plans' purchase of customer notes as described in paragraphs 69 through 80, while Bluegrass acknowledged and accepted, in writing, fiduciary responsibility with respect to the Plans' purchase of a customer note as described in paragraphs 81 through 82.

84.     Upon information and belief, Hofmeister approved the disbursement of the Plans' assets to purchase customer notes as described in paragraphs 69 through 83.

85.     By the conduct described in paragraphs 69 through 84 above, defendants Hofmeister, Tew, Tew Enterprises, and Bluegrass:

a.      failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.      failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

      c.      caused the Plans to engage in transactions which they knew or should have known constituted a direct or indirect sale or exchange, or leasing, of any property between the Plans and a party in interest, in violation of ERISA §406(a)(1)(A), 29 U.S.C. §1106(a)(1)(A);

      d.      caused the Plans to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

      f.      acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

86.      By the conduct described in paragraphs 69 through 84 above, defendant Hofmeister dealt with assets of the Plans in his own interest in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1).

87.      Defendant Metavation failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration when it allowed the Plans to engage in the activities set forth in paragraphs 69 through 84 above, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A).

88.      Defendant Metavation is liable, pursuant to ERISA §405(a)(2), 29 U.S.C. §1105(a)(2), for the breaches of fiduciary responsibility by a co-fiduciary, as described in paragraphs 69 through 86 above, because by failing to comply with ERISA §404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of its specific responsibilities which gave rise to its status as a fiduciary of the Plans, it enabled Hofmeister, Tew, Tew Enterprises, and Bluegrass to commit the breaches set forth in paragraphs 85 through 86 above.

89.     Defendant Metavation is liable, pursuant to ERISA §405(a)(3), 29 U.S.C.

§1105(a)(3), for the breaches of fiduciary responsibility by co-fiduciaries Hofmeister, Bernard

Tew, Tew Enterprises, and Bluegrass, as described in paragraphs 69 through 86 above, because it

had knowledge of the breaches and failed to make reasonable efforts under the circumstances to

remedy the breaches.

90.     Defendant MIDS knowingly participated in the violations involving the Plans'

purchase of its customer notes. For this reason, the Secretary may obtain equitable relief from

MIDS pursuant to ERISA §502(a)(5), 29 U.S.C. § 1132(a)(5).

### COUNT SIX
**(Plans' Payment of Fees to Bernard Tew, Tew Enterprises, and Bluegrass)**

91.     Paragraphs 1 through 9, 11 through 13, and 25 through 27 above are realleged and

incorporated herein by reference.

92.     During the period February 25, 2009 to October 31, 2010, Bernard Tew and his

company, Tew Enterprises, served as investment advisor to the Plans.

93.     During the period November 1, 2010, through the present, Bernard Tew and his

company, Bluegrass, served as investment advisor to the Plans.

94.     During the period March 1, 2009 to November 2, 2010, the Plans paid Tew

Enterprises $1,067,056.08 in fees.

95.     During the period December 2, 2010, to April 2, 2012, the Plans paid Bluegrass

$933,488.17 in fees.

96.     Upon information and belief, Hofmeister and Metavation retained Bernard Tew,

Tew Enterprises, and Bluegrass as service providers to the Plans.

97.     As alleged in paragraphs 92 through 96 above, defendants Hofmeister and

Metavation:

        a.        failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

        b.        failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

        c.        caused the Plans to engage in transactions which they knew or should have known constituted a furnishing of goods, services, or facilities between the Plans and a party in interest, in violation of ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C); and,

        d.        caused the Plans to engage in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Plans, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D).

        e.        acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

### COUNT SEVEN
**(Improper Allocation of Payments and Expenses Between Plans)**

98.      Paragraphs 1 through 9, 11 through 27, 28 through 32, 57 through 63, and 68 through 84 above are realleged and incorporated herein by reference.

99.      For the period from April to June, 2009, payments due on the Salaried Plan's loan to Revstone Plastics, as detailed in paragraphs 28 through 32 above were $15,000 and payments

due on the Hourly Plan's loan to Revstone Plastics were $20,000. During this period, the Salaried Plan actually received payments of $12,500 and the Hourly Plan actually received payments of $22,500 on the loan to Revstone Plastics.

100.     For the period from April to June, 2009, the Hourly Plan received from Revstone Plastics $7,500 in interest payments on the Revstone Plastics loan that were actually owed to the Salaried Plan.

101.     On April 15, 2010, the Salaried Plan paid 50% of the expenses with respect to legal services provided by Bowles Rice, the Plans' attorney.

102.     The Salaried Plan contributed 31% of the funds and the Hourly Plan contributed 69% of the funds to purchase the business and real property located at 1508 Hwy 246 S, Greenwood, SC 29646, as detailed in paragraphs 58 through 63 above.

103.     On September 15 and November 14, 2010, the Hourly Plan received 100% of the lease payments, $31,252.82, paid on the real property located at 1508 Hwy 246 S, Greenwood, SC 29646. Thirty-one percent of these lease payments, or a total of $19,376.74, was owed to the Salaried Plan.

104.     The Salaried Plan contributed 31% of the funds and the Hourly Plan contributed 69% of the funds to purchase the customer notes from MIDS, as detailed in paragraphs 68 through 84 above.

105.     On December 27, 2010, the Hourly Plan received 100% of the interest payment, $37,000, on the customer note of Lansing Tool, as detailed in paragraphs 71 through 72 above. Thirty-one percent of this payment, or a total of $11,470, was owed to the Salaried Plan.

106.     The Hourly Plan paid 100% of the expenses with respect to legal services and property fees incurred by the Plans between August and December, 2010.

107.    On July 14, 2011, the Hourly Plan received $79,083.34 as full payment of interest on the customer notes of RPM Towing and RPM Sales, as detailed in paragraphs 73 through 76 above. Thirty-one percent of this payment, or a total of $24,515.84, was owed the Salaried Plan. Only $12,115.84 was transferred to the Salaried Plan.

108.    On August 2, 2011, the Hourly Plan received $31,252.82 as full payment of the lease on the real property located at 1508 Hwy 246 S, Greenwood, SC 29646. Thirty-one percent of this payment, or a total of $9,688.37, was owed the Salaried Plan. A transfer of $10,385 was made to the Salaried Plan.

109.    The allocation of expenses and payments among the Plans, as described in paragraphs 99 through 108 above, were authorized by Hofmeister and Metavation.

110.    As alleged in paragraphs 99 through 109 above, defendants Hofmeister and Metavation:

a.    failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b.    failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B); and

c.    acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

## COUNT EIGHT
### (Collection of Interest Payments and Late Fees on customer notes and lease)

111.   Paragraphs 1 through 14, 17 through 24, and 69 through 84 above are realleged and incorporated herein by reference.

112.   Payments on the Plan's lease to Contech Forgings were current through October 2011.  Payments on the Contech Forgings property have been late four (4) times since the inception of the lease, resulting in late fees of $400, which have not been paid to the Plans.

113.   Payments on the Plan's customer notes from Contech Forgings were current through October 2011.  Payments on the first Contech Forgings customer note have been late two (2) times since the inception of the customer note, resulting in late fees of $200, which have not been paid to the Plans.

114.   No payments have been received on the Lansing Tool customer note for the months of September or October, 2011, resulting in unpaid interest for the Plans of $74,000 and unpaid late fees for the Plans of $200.

115.   No payments have been received on the RPM Towing customer note for the months of August through October, 2011, resulting in unpaid interest for the Plans of $118,625.01 and unpaid late fees for the Plans of $300.  Additional late fees totaling $800 have not been paid to the Plans.

116.   No payments have been received on the RPM Sales customer note for the months of August through October, 2011, resulting in unpaid interest for the Plans of $118,625.01 and unpaid late fees for the Plans of $300.  Additional late fees totaling $700 have not been paid to the Plans.

117.   No payments have been received on the Saleen customer note for the months of August through October, 2011, resulting in unpaid interest for the Plans of $122,499.99 and

unpaid late fees for the Plans of $300.  Additional late fees totaling $500 have not been paid to the Plans.

118.     Interest payments on the customer note from Saleen Sales are $29,166.67 for the Plans.  Interest payments received by the Plan for the month of November 2010 and forward were $17,500, resulting in unpaid interest for the Plans of $105,000.03.

119.     No payments have been received on the Saleen Sales customer note for the months of August through October, 2011, resulting in additional unpaid interest for the Plans of $87,500.01 and unpaid late fees for the Plans of $300.  Additional late fees totaling $500 have not been paid to the Plans.

120.     Tew Enterprises acknowledged and accepted in writing fiduciary responsibility with respect to the Plans' purchase of customer notes as described in paragraphs 69 through 84.

121.     Bluegrass is the successor entity to Tew Enterprises and acknowledged fiduciary responsibility with respect to the Plans' investments.

122.     Invoices prepared by Tew Enterprises and Bluegrass resulted in the underpayment to the Plans described in paragraph 118.

123.     Upon information and belief, Bernard Tew approved the invoices described in paragraph 122 and made no efforts to collect the missing interest payments and late fees described in paragraphs 112 through 119.

124.     Upon information and belief, Hofmeister made no efforts to collect the missing interest payments and late fees described in paragraphs 112 through 119.

125.     By the conduct described in paragraphs 112 through 124 above, defendants Hofmeister, Tew, Tew Enterprises, and Bluegrass:

      a.      failed to act solely in the interest of the participants and beneficiaries of the Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of the Plans' administration, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

      b.      failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B); and

      c.      acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

**COUNT NINE**
**(Investment of the Plans' assets in SIF Technology Company, LLC)**

126.    Paragraphs 1 through 10 and 12 through 13 above are realleged and incorporated herein by reference.

127.    On or about October 20, 2010, the Plans entered into a Membership Interest Purchase Agreement with ABAQA Corporation ("ABAQA"), HB Polymer Company, LLC ("HB Polymer"), and SIF Technology Company, LLC ("SIF").

128.    On or about October 19, 2010, the Plans entered into the First Amended and Restated Operating Agreement of SIF Technology Company ("SIF Operating Agreement"). Parties to the SIF Operating Agreement were SIF, the Plans, HB Polymer, and Palm International, Ltd. ("Palm").

129.    Under the terms of the Membership Interest Purchase Agreement, the Plan acquired 65,000 shares of SIF stock from ABAQA. In return, the Plans paid $1.0 million to

25

ABAQA and $1.0 million to Palm.  The money paid to the Palm was to repay loans Palm had made to SIF and for a broker's fee.

130.    Under the terms of the SIF Operating Agreement, the Plans agreed to pay an additional $250,000 to Robert Mabbott as a "capital contribution" and an additional $750,000 to SIF as a "capital commitment."

131.    The $250,000 "capital contribution" paid to Robert Mabbott was for a "finder's fee."

132.    The $750,000 "capital commitment" paid to SIF was for "working capital."

133.    Pursuant to the SIF Operating Agreement, immediately after acquiring 65,000 shares of SIF from ABAQA, the Plans assigned 15,000 of their shares to HB Polymer and 10,000 shares to Palm.

134.    Tew, as managing member of Bluegrass, signed the Membership Interest Purchase Agreement and SIF Operating Agreement on behalf of the Plans.

135.    In October of 2010, Tew, as managing member of Bluegrass, caused the Plans to transfer $3,001,240 for the purchase of SIF.

136.    As part of the Plans' purchase of SIF, Tew, in his personal capacity, was made a co-manager of SIF. Tew, as co-manager of SIF, signed the SIF Operating Agreement on behalf of SIF.

137.    On January 18, 2011, Tew, as managing member of Bluegrass, caused the Salaried Plan to transfer an additional $400,000 to SIF. The same day, Tew, as managing member of Bluegrass, caused the Hourly Plan to transfer $276,000 to the Salaried Plan. The $400,000 payment from the Plans to SIF was initially characterized by Bluegrass as an equity investment in SIF, but in June of 2011, Bluegrass re-characterized it as a loan to SIF.

138.    On June 29, 2011, Tew, as managing member of Bluegrass, caused the Salaried Plan to transfer an additional $250,000 to SIF. The $250,000 payment from the Salaried Plan to SIF was characterized as a debt investment.

139.    As alleged in paragraphs 127 through 138 above, defendants Tew and Bluegrass:

a.    failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B);

b.    dealt with assets of the Plans in their own interest in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

c.    acted on behalf of a party whose interests are adverse to the interests of the Plans or the interests of their participants and beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

## **PRAYER FOR RELIEF**

WHEREFORE, the Secretary prays for judgment:

A.    Permanently enjoining defendants Hofmeister, Metavation, Bernard Tew, Tew Enterprises, Bluegrass, and MIDS from violating the provisions of Title I of ERISA;

B.    Ordering Defendants Hofmeister, Metavation, Bernard Tew, Tew Enterprises, and Bluegrass to make good to the Plans any losses, including interest, resulting from fiduciary breaches committed by them or for which they are liable;

C.    Requiring defendants Hofmeister, Metavation, Bernard Tew, Tew Enterprises, Bluegrass, and MIDS to disgorge all ill-gotten gains resulting from their violations of Title I of ERISA.

D.      Ordering Defendants Hofmeister, Metavation, Bernard Tew, Tew Enterprises, and Bluegrass to correct the prohibited transactions in which they engaged;

E.      Removing Hofmeister, Metavation, Bernard Tew, Tew Enterprises, and Bluegrass from their positions as fiduciaries with respect to the Plans;

F.      Permanently enjoining defendants Hofmeister, Metavation, Bernard Tew, Tew Enterprises, and Bluegrass from serving as fiduciaries or service providers to any ERISA-covered Plan;

G.      Appointing an Independent Fiduciary to administer the Plans;

H.      Awarding the Secretary the costs of this action; and

I.      Ordering such further relief as is appropriate and just.

**M. PATRICIA SMITH**
Solicitor of Labor

**JANET M. GRANEY**
Acting Regional Solicitor

  s/Ruben R. Chapa____
**Ruben R. Chapa**
Senior Trial Attorney

  s/Matthew M. Scheff_
**MATTHEW M. SCHEFF**
Trial Attorney

Attorneys for Hilda L. Solis,
Secretary of Labor, United
States Department of Labor,
Plaintiff
Office of the Solicitor
U.S. Department of Labor
230 South Dearborn Street
Eighth Floor
Chicago, Illinois 60604
Telephone:  (312) 353-6993
Fax:  (312) 353-5698
Email:chapa.ruben@dol.gov